IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

Noel L. Wilson and
Kimberly M. Wilson,                             Bankruptcy No. 07-21417

    Debtor(s)                                Chapter 13

Noel L. Wilson and
Kimberly M. Wilson,

    Plaintiff(s)

v.                                              Adversary No. 09-02025
                                                **Related to Doc. No. 4** Motion to Dismiss
                                                Adversary Proceeding

DaimlerChrysler Financial Services
Americas, LLC,

    Defendant(s)

### MEMORANDUM OPINION[1]

Before the court is Creditor-Defendant's Motion to Dismiss this Adversary on the ground that it fails to state a claim upon which relief can be granted pursuant to Fed. R. Bankr. P. 7012, which incorporates Fed. R. Civ. P. 12(b)(6). Adv. Doc. No. 4. "Pursuant to Rule 12(b)(6), a plaintiff's complaint must be dismissed for failure to state a claim if a defendant demonstrates 'beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Griesenbeck v. American Tobacco Co.*, 897 F.Supp. 815, 819 (D.N.J. 1995). The court must accept all allegations in the complaint as true, "and all reasonable

---

[1]The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

1

inferences must be drawn in the plaintiff's favor." *Id.* The essential facts are not in dispute.

On March 7, 2007, Plaintiffs Noel L. Wilson and Kimberly M. Wilson (hereinafter "Plaintiffs" or "Debtors") filed a Chapter 13 bankruptcy in the Western District of Pennsylvania. Defendant DaimlerChrysler Financial Services Americas, LLC (hereinafter "Chrysler"), is the holder of a properly perfected first-in-right purchase money security interest in one 2002 Dodge Caravan (V.I.N. 1B8GP25372B681169) owned by and in the possession and control of the Debtors. Case No. 07-21417, Claim No. 1.

The proof of claim filed by Chrysler on March 23, 2007, claimed secured status in the amount of $12,862.06, plus contract rate of interest of 16.5%. *Id.* Debtors' Chapter 13 Plan dated March 31, 2007, was filed with the court on April 2, 2007. Case No. 07-21417, Doc. No. 13. Debtors' Chapter 13 Plan provides for Chrysler's claim to be paid in full according to the terms as listed in the proof of claim, i.e., principal balance of $12,862.06, plus 16.5% interest rate with a monthly payment of $473.14, the exact amount provided for in the proof of claim. *See* Plan, Case No. 07-21417, Doc. No. 13, at ¶5.

An order dated October 15, 2007, provided that "*upon consent of the Debtor(s)*, the Chapter 13 Plan dated 3/31/2007 is CONFIRMED . . . ." Case No. 07-21417, Doc. No. 34, at ¶1 (emphasis added). Additionally, the Confirmation Order provided that "Terms of the Plan not expressly modified by this Order remain in full force and effect." *Id*. The Confirmation Order does not expressly modify treatment of Chrysler's claim as listed in the Chapter 13 Plan. *Id.* Finally, the Confirmation Order provided Plaintiffs with the opportunity to file a §506 action to determine the allowed amount of the secured claim (a "cramdown"), but Plaintiffs chose not to do so. *Id.* at ¶2. Paragraph 2(D) of the Confirmation Order clearly states, "Motions or

2

Complaints Pursuant to §§ 506, 507 or 522.  All actions to determine the priority, avoidability, or extent of liens, all actions pursuant to *11 U.S.C. §§506, 507 and 522 shall be filed within ninety (90) days after the claims bar date.*"  *Id.* (emphasis added).

The "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" provided notice that the deadline to file proofs of claim was August 20, 2007.  Case No. 07-21417, Doc. No. 18.[2]  Thus, pursuant to the Confirmation Order, all §506 actions should have been filed by November 19, 2007.  Plaintiffs filed the within adversary proceeding on January 15, 2009.  The basis of the adversary proceeding was that the fair market value of the vehicle was $2,000.00 at the time the bankruptcy case was filed.  Debtors' Complaint to Determine Secured Status Under Section 506 of the Bankruptcy Code, Adv. Doc. No. 1, at ¶¶4-5.[3]  Plaintiffs filed the adversary proceeding approximately 425 days after the deadline.

Despite having included the claim in the plan as a secured claim to be paid in full with interest at the contract rate, and long after the date set in the confirmation order, Debtors filed this action and now assert that the collateral that secures the lien was worth only $2,000.00 when the bankruptcy was filed.  Debtors seek to de-value the collateral retroactively to the date of

---

[2] The proof of claim deadline is also stated in the docket entry of the §341 notice.  Case No. 07-21417, Doc. No. 18.

[3] Debtors assumed that an adversary had to be brought regarding the valuation of collateral and the bifurcation of the claim.  The assumption is not correct, as only actions challenging the validity, priority, or extent of the lien must be brought through an adversary proceeding.  Fed. R. Bankr. P. 7001(2).  "Voiding a lien for lack of collateral value, pursuant to Section 506,...can be accomplished by motion under Rule 3012, or, if proper notice is given, through the plan confirmation process."  *In re Dickey*, 293 B.R. 360, 363 (Bankr.M.D.Pa. 2003).  *Cf. In re Mansaray-Ruffin*, 530 F.3d 230 (3d Cir. 2008).  Pursuant to paragraph 2(D) of the Confirmation Order, a motion to determine the value of the collateral under §506 is subject to the court-imposed ninety day deadline. Case No. 07-21417, Doc. No. 34.

3

filing and to assess the secured claim at $2,000.00 with the balance of $10,862.06 determined to be unsecured. Debtors wish to ignore the fact that paragraph 7 of the confirmed plan specifically stated that Debtors did not propose to avoid or limit the lien of this (or any other) creditor. Case No. 07-21417, Doc. No. 13. The amounts stated in paragraph 5 of the plan acknowledged the exact amounts claimed as due by the creditor; i.e., $12,862.06 at 16.5% interest for a monthly contractual payment of $473.14. *Id.* Moreover, the Adversary does not challenge the secured status, perfection or validity of the lien. Debtors' complaint did not cite the specific subsection of §506 on which they rely. However, the complaint seeks only to set the value of the collateral to determine how much of the claim is secured and to bifurcate the claim into its secured and unsecured components. Section 506(a) addresses valuation.[4]

We note that, in reliance on the confirmed plan, the Trustee distributed to Chrysler more than the $2,000.00 Debtors now claim is the appropriate allowed secured claim.

In opposition to the Motion to Dismiss, Debtors contend that this action is not barred by principles of *res judicata* or by virtue of having been filed fourteen months after the deadline set in the plan confirmation order. Debtors' Brief in Response to Motion to Dismiss, Adv. Doc. No. 12, at 2-3. We disagree.

---

[4] This Adversary is subject to §506(a)(2), added by BAPCPA and effective as to cases filed on and after October 17, 2005. Valuation of this personal property, therefore, must be based on replacement value as of the date the bankruptcy was filed, without deductions for costs of sale or marketing. Debtors assert a value as of the petition date of $2,000.00. It is not clear whether this assertion is based upon a NADA "Blue Book" value or is based upon a valuation allegedly obtained by the Debtors in November of 2007. *See* Transcript of 5/13/2009, Case No. 07-21417, Doc. 18, at 9 where counsel for Debtors stated, "[W]hat a lot of times guides these types of cases is the Blue Book value, which is something that we know." He further stated that "[W]e have a valuation from November of '07." *Id*. at 10. For purposes of the pending motion to dismiss, the valuation method is not material.

4

Court-Imposed Deadline

The plan confirmation order dated October 15, 2007, set a limitations period within which actions under §506 could be brought. That date was ninety days after the claims bar date. In this case, the applicable claims bar date was August 20, 2007, and the last date to file such actions was November 19, 2007. The action was filed on January 15, *2009*, fourteen months after the deadline.

An order providing a limitations period is consistent with, and not in derogation of, the national Federal Rules of Bankruptcy Procedure. The national rules do not set a time frame within which such actions may be brought. In Chapter 13 cases, the determination of secured claims is of paramount significance for several reasons which include, *inter alia*, calculating payments required by the plan, determining whether the payments are affordable by debtors such that the plan is feasible, calculating the length of the plan (i.e., the "plan term"), and determining the necessity for and amount of distributions to unsecured creditors.

Because plan confirmation orders in the district are often entered before the claims bar date passes, debtors may not be able to calculate the exact amount of a secured claim and may be unaware of the components of the claim when the plan is confirmed initially. To afford creditors the opportunity to assess their claims and debtors the opportunity to object to those claims and/or to modify the plan to adjust its terms to the claims, the confirmation order sets dates by which the actions necessary to accomplish final confirmation must occur.

Debtors contend that they are not bound by the time limit set in the confirmation order. They cite *In re Lewis*, 875 F.2d 53 (3d Cir.1989), for the proposition that there can be no time limit set because to do so would somehow affect the substantive rights of the Debtors-Plaintiffs.

5

Debtors' Brief in Response to Motion to Dismiss, Adv. Doc. No. 12, at 2.  Of course, limitations periods do, in fact, affect substantive rights in that they establish time frames within which actions may be commenced to adjudicate rights.  *Lewis* determined that a §506(d) action brought seven months after the confirmation was not time barred because neither §506(d) nor the operative Rule (Fed. R. Bankr. P. 3012) set a time limit and no prejudice had been demonstrated. 875 F.2d at 57.  The current versions of §506 and Rule 3012 still do not contain a statutory limitations period.  Nonetheless, the court is permitted to establish time frames to control matters within a case and the court's calendar.  *See, e.g.,* Fed. R. Bankr. P. 9006(b)(1)("Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified time period by these rules or by a notice given thereunder *or by order of court*")(emphasis added).  *See also* Fed. R. Bankr. P. 9006(a)("In computing any period of time prescribed or allowed by these rules . . .by order of court . . . .").  *Also see* 11 U.S.C. §105(a)("The court may issue any order . . . necessary or appropriate to carry out the provisions of this title").   Furthermore, Fed. R. Bankr. P. 9029(b) provides a judge with the authority to "regulate practice" where there is no controlling law.[5]  Case law supports this analysis.[6]

---

[5] Fed. R. Bankr. P. 9029(b) provides that "[a] judge may regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district.  No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, Official Forms, or the local rules of the district unless the alleged violator has been furnished in the particular case with actual notice of the requirement."  Here, there is no controlling law as neither the Code nor the applicable rule provide time limits within which such actions must be commenced.  Plaintiffs were put on notice of the court-imposed deadline, which was clearly stated in the Confirmation Order.  Case No. 07-21417, Doc. No. 34, ¶2.

[6] *See In re Combustion Engineering, Inc.,* 391 F.3d 190, 235-36 (3d Cir. 2004) ("Bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve
(continued...)

Second, this case is not controlled by the analysis in *Lewis*. There, no deadline to commence an action was imposed. Here, a court order provided ample time for Debtors to evaluate the claim and oppose it. *Lewis* dealt with a second lien on debtor's residence and a plan that did not say that Debtors would not commence a §506 modification. 875 F.2d at 54. Here, paragraph 5 of the confirmed plan specified that Debtors did not contemplate a §506 action and the plan did not otherwise modify Chrysler's claim or propose to challenge its purchase money, first priority lien.

Third, *Lewis* found that the junior lien creditor was not prejudiced by the action commenced seven months after confirmation. *Id.* at 57. Here, however, Chrysler, the primary secured creditor, has shown prejudice. In reliance on the confirmed plan, the Trustee disbursed to Chrysler funds that exceed the $2,000.00 value Debtors now assert is the correct value for their vehicle. Chrysler had no need to participate in or object to confirmation based upon the plan's treatment of its claim as fully secured, payable according to contract terms with contract interest. Now Chrysler is faced with a complete about-face by Debtors, who have alleged absolutely nothing by way of changed circumstances or reason of any sort for their delay in filing this action. They have proffered no excuse for their failure to state in paragraph 5 of their plan an

---

⁶(...continued)
fairness and justice in the reorganization process.' . . . . [Section 105(a)] has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings")(citations omitted); *In re Quintus Corp.,* 389 B.R. 390, 393 (Bankr.D.Del. 2008) (citing *Shepherd v. American Broadcasting Companies, Inc*, 62 F.3d 1469, 1479 (D.C. Cir. 1995) for the proposition that "[a]s old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and guard against abuses of the judicial process . . . ."); *In re Moore*, 319 B.R. 504, 511 (Bankr.S.D.Tex. 2005)(finding that the court had the authority to issue an order setting deadlines pursuant to "§§105(a) and (d) and under the Court's inherent authority to manage its docket").

intent to use §506, notwithstanding the availability of, at the very least, the "Blue Book" value when the plan was filed. *See* note 4, *supra*. They also failed to explain why they did not file this proceeding for fourteen months after they purportedly obtained a valuation in November of 2007.[7] While Debtors delayed, the Trustee made distributions according to Debtors' confirmed plan - a plan Debtors filed and promulgated.

<u>Res Judicata</u>

Debtors also seek to set aside the *res judicata* effect of their confirmed plan on the grounds that Chrysler's claim is merely one which can be reconsidered and that the value of the vehicle was not an issue that could have been determined as part of the confirmation process. Although allowed claims can be reconsidered for cause pursuant to §502(j) if the equities of the case so warrant, Debtors' arguments fail. Debtors proffer no reason and give no cause as to why the court should reconsider this claim. Debtors addressed it specifically in their plan and proffer nothing as to why their original intent regarding this claim should not be carried out. Moreover, although recent case law in this Circuit indicates that certain liens may be invalidated only through an adversary action and not through a plan, *In re Mansaray-Ruffin*, 530 F.3d 230 (3d Cir. 2008), nothing in that opinion indicates that Debtors' agreement to pay a claim in full according to contract terms, under the circumstances of this case, is not binding on Debtors and creditors.

Debtors cite *Mansaray-Ruffin* for the proposition that "[t]o obtain relief under Section 506 of the Bankruptcy Code, an Adversary Complaint must be filed." Debtors' Response to Motion to Dismiss, Adv. Doc. No. 8, at ¶ 14. *Mansaray-Ruffin* is distinguishable from the facts herein, and Debtors misinterpret the court's holding. *Mansaray-Ruffin* was a challenge to the

---

[7] The November 2007 valuation has not been provided to the court.

validity of a lien, not valuation of collateral. Challenges to the validity, extent and priority of liens are subject to the adversary rules. Fed. R. Bankr. P. 7001(2). In *Mansaray-Ruffin* the court addressed whether the Chapter 13 debtor "successfully *invalidated* a lien on her property by providing for it as an unsecured claim in her confirmed plan, without initiating an adversary proceeding . . . ." 530 F.3d at 232 (emphasis added). Federal Rule of Bankruptcy Procedure 7001 requires that certain matters be resolved through an adversary proceeding, including actions "to determine the validity, priority, or extent of a lien or other interest in property."[8] In *Mansaray-Ruffin*, the "validity" of a lien was the issue, and the court distinguished "cases that have permitted liens to be 'stripped,' pursuant to §506 . . . through the confirmation of a plan." 530 F.3d at 235-36. The court explained that "the concept of 'lien stripping' is related to the valuation of collateral, not the validity of the lien." *Id.* at 236.[9] Valuation under § 506(a) "may be resolved through the confirmation process." *In re Dickey*, 293 B.R. 360, 363 (Bankr.M.D.Pa. 2003). "[T]he terms of a confirmed plan are binding." *Mansaray-Ruffin,* 530 F.3d at 238 (citing *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989), for the proposition that "[u]nder §1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at

---

[8] "'Validity' means the existence or legitimacy of the lien itself, 'priority' means the lien's relationship to other claims to or interests in the collateral, and 'extent' means the scope of the property encompassed by or subject to the lien . . . . Voiding a lien for lack of collateral value, pursuant to Section 506 is outside the scope of Bankruptcy Rule 7001(2) and can be accomplished . . .through the plan confirmation process." *In re Dickey*, 293 B.R. 360, 363 (Bankr.M.D.Pa. 2003).

[9] *See also In re Kemp*, 391 B.R. 262, 265 (Bankr.D.N.J. 2008) ("Here, the debtor is not seeking to invalidate the lien . . . . Rather, the debtor seeks to strip the . . . lien based on the value of the collateral. The *Mansaray-Ruffin* court . . . confirmed that Rule 7001 does not require a debtor to file an adversary complaint where the debtor seeks to modify the lien amount based on the value of the collateral")(citations omitted).

9

the hearing on confirmation"). However, in holding that the debtor was required to commence an adversary proceeding pursuant to Rule 7001 to avoid a lien, the *Mansaray-Ruffin* court recognized that the Rule was "grounded in principles of due process that trump 'finality.'" *Id.* at 238.

Here, the issue is valuation so no adversary proceeding was required to be filed. The plan did not challenge Chrysler's lien. In fact, the reverse is true inasmuch as Debtors' plan accepted the lien at full value and provided for its payment in accordance with Chrysler's proof of claim and without any indication that they intended to challenge the lien or the value of the collateral. There was no dispute as to the value of the collateral at any time until this Adversary was filed. Chrysler therefore had no reason to object to the plan. The Bankruptcy Code states that a confirmed plan is binding on debtors and all creditors. 11 U.S.C. §1327(a). The plan at issue did, in fact, set the value of this vehicle by promising to pay the claim in full as provided in the contract. The plan form permits Debtors to provide for other treatment but Debtors did not do so.

Our court has ruled that a modification of a confirmed plan under §1329(a) must be based upon a change in circumstances that is substantial, material or unanticipated at the time of the initial confirmation. *In re Mellors*, 372 B.R. 763, 770-71 (Bankr.W.D.Pa. 2007). "Where this standard is met, *res judicata* will not preclude debtors from seeking modification." *Id.* at 770. Debtors have failed to state *any* change in circumstances to warrant a change in the plan that would bifurcate a claim they have already agreed to pay in full.

For these reasons, the Motion to Dismiss this complaint will be granted. Plaintiffs can prove no set of facts in support of their complaint which would entitle them to the relief sought.

10

*See Griesenbeck v. American Tobacco Co.*, 897 F.Supp. 815 (D.N.J. 1995).

    An appropriate order will be entered.

Dated: 7/30/2009
DATE: 14:59:24

_____
Judith K. Fitzgerald
United States Bankruptcy Judge

cjs

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

Noel L. Wilson and
Kimberly M. Wilson,                             Bankruptcy No. 07-21417

    Debtor(s)                                    Chapter 13

Noel L. Wilson and
Kimberly M. Wilson,

    Plaintiff(s)

v.                                              Adversary No. 09-02025
                                                **Related to Doc. No. 4** Motion to Dismiss
                                                Adversary Proceeding

DaimlerChrysler Financial Services
Americas, LLC,

    Defendant(s)

**ORDER**

    **AND NOW**, this 30th day of July, 2009, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that the Motion to Dismiss is granted and the Complaint is **DISMISSED.**

    It is **FURTHER ORDERED** that counsel for Debtors shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

    It is **FURTHER ORDERED** that the Clerk shall close this Adversary.

Dated: 7/30/2009
14:58:51

*Judith K. Fitzgerald*
Judith K. Fitzgerald
United States Bankruptcy Judge

cjs

1